**ZIMMERMAN REED LLP**
Christopher P. Ridout (SBN 143931)
  *christopher.ridout@zimmreed.com*
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel: (877) 500-8780; Fax: (877) 500-8781

**LAW OFFICES OF DAVID N. LAKE, APC**
David N. Lake (SBN 180775)
  *david@lakelawpc.com*
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Tel: (818) 788-5100; Fax: (818) 479-9990

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN ANGEL EISENBERG, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, SOUTHWEST BUSINESS CORPORATION aka SWBC., a Texas corporation; and DOES 1 through 20, inclusive,<br><br>      Defendants. | CASE NO.: 2:18-CV-04157<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Breach of Contract<br>2. Breach of Implied Covenant of Good Faith and Fair Dealing<br>3. Violation of California Unfair Competition Law, Business and Professions Code §17200, *et seq.*<br>4. Money Had and Received (Restitution)<br><br>**(Jury Trial Demanded)** |

CLASS ACTION COMPLAINT

Plaintiff Kathleen Angel Eisenberg ("Plaintiff"), by and through her undersigned counsel, and on behalf of herself and all others similarly situated, brings the following Class Action Complaint against Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Southwest Business Corporation aka SWBC ("SWBC") (collectively "Defendants"), based upon information and belief and the investigation of counsel, except for information based on personal knowledge, and hereby allege as follows:

## INTRODUCTION

1.      This is a class action filed to redress injuries that Plaintiff and a class of California consumers have suffered and will continue to suffer as a result of Defendants' improper policies and practices regarding force-placed insurance.

2.      Specifically, Plaintiff and Class members allege that defendant Ocwen procures forced-place hazard insurance policies to provide coverage for homes whose mortgages are owned and/or serviced by Ocwen and then charges the homeowners for the cost of the forced-place hazard insurance policies even though the homeowners already have in place valid hazard insurance policies for the property. Ocwen thus adds another layer of unnecessary and unjustified cost to the homeowners who are billed for the Ocwen procured forced-place hazard insurance policies and whose debt is artificially inflated and overstated in the process.

3.      In addition, and making matters worse still, Plaintiff and Class members allege that Ocwen and SWBC are engaged in an illegal kickback scam, whereby Ocwen procures forced-placed hazard insurance policies from SWBC in exchange for remuneration from SWBC. Although Ocwen purports to be charging homeowners the "cost" of forced-placed insurance, in reality Ocwen either retains, or has paid to it by SWBC, a portion of the insurance policy price. Ocwen does no meaningful work for the sums received, and therefore the payments amount to an unearned kickback designed to encourage the referral of business to SWBC. Plaintiff seeks to recover damages equal to the amount of the improper and inequitable financial benefit

received by Ocwen and/or its affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected.

4.    Plaintiff and Class members are homeowners whose mortgages are owned and/or serviced by Ocwen.

5.    Lenders, including Ocwen, require borrowers to purchase and agree to maintain hazard insurance coverage on the secured property as a condition to funding home loans. Plaintiff and Class members' mortgage contracts required them to obtain and maintain hazard insurance.

6.    In the event that borrowers are unable or unwilling to maintain hazard insurance policies, Ocwen procures such policies, but does so with considerably more expensive policies provided by SWBC pursuant to a contract between Ocwen and SWBC.  Ocwen then forces borrowers to pay for the policies by diverting monthly mortgage payments and/or debiting the borrowers' escrow or suspense accounts.

7.    Force-placed (also known as "lender-placed") insurance policies are a major profit source for insurance companies including SWBC. The policies provide less coverage than normal hazard policies, yet are substantially more costly (5 to 10 times the price) than the borrowers' original policies. Accordingly, companies such as SWBC have a strong incentive to resort to underhanded tactics to secure business from servicers such as Ocwen.

8.    Here, Ocwen and SWBC have engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in regards to their purchase and placement of force-placed insurance policies. In doing so, Ocwen and SWBC acted with bad motive and bad intentions and in order to extract funds from Plaintiff and the Class. As set forth in detail below, Ocwen and SWBC have engaged in unlawful, abusive and unfair practices with respect to force-placed insurance by adding such insurance when an existing borrower placed insurance policy was already in place and by receiving kickbacks in the form of purported fees, payments, commissions,

CLASS ACTION COMPLAINT                                                    2

"rebates" and/or other things of value from providers of force-placed insurance.

9.      Upon information and belief, Ocwen entered into agreements with SWBC, pursuant to which Ocwen and/or its subsidiaries or affiliates receive a portion of the premiums for each force-placed insurance policy purchased.  Moreover, upon information and belief, those arrangements are exclusive. Upon information and belief, SWBC has paid Ocwen more than $5 million in kickbacks from force-placed policies imposed on Class members during the class period.

10.     In bringing this class action, Plaintiff does not challenge the rates filed by SWBC and/or any other insurance carrier as excessive. Rather, Plaintiff challenges: a) the need for any such insurance; and b) the manner in which Ocwen selected SWBC as the insurer, and the impermissible kickbacks that were included in the premiums. By doing so, Ocwen and SWBC manipulated the force-placed insurance process for their own financial gain, with bad motive, in breach of Ocwen's contractual duties and in violation of statutory and common law.

11.     At issue in this case is whether Ocwen and SWBC have been unjustly enriched by manipulating the force-placed insurance process so as to obtain unearned kickbacks and breached the express and/or implied terms of the mortgage contract (including the implied covenant of good faith and fair dealing) by unreasonably, unconscionably and unlawfully exercising  their  contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits for themselves at Plaintiff's and Class members' expense, and in turn, misrepresented the true cost of insurance charged to class members and overcharged them beyond the amount permitted by contract. In this action, Plaintiff challenges Ocwen and SWBC's unlawful conduct and seeks compensatory damages, restitution for their unjust enrichment, declaratory, injunctive and other equitable relief.

## **THE PARTIES**

12.     Individual and representative Plaintiff Kathleen Angel Eisenberg ("Plaintiff") resides in Calabasas, California in the County of Los Angeles.  She is

titleholder to her home, the mortgage for which is owned and/or serviced by defendant Ocwen Loan Servicing, LLC.  Plaintiff is a member of the proposed Class.

13.    Defendant Ocwen Loan Servicing, LLC ("Ocwen"), is a Delaware limited liability company and wholly-owned subsidiary of Ocwen Financial Corporation.  It maintains its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

14.    Defendant SWBC ("SWBC") is a Texas corporation with its principal place of business at 9311 San Pedro Ave, Suite 600, San Antonio, Texas 78216.

15.    Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names.  Plaintiff is informed and believes and based on such information and belief allege that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

16.    Plaintiff is informed and believes and based on such information and belief allege that Defendants Ocwen and SWBC, and DOES Defendants 1 through 10, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.  Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because at least one

Class member is of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest or costs.

18.    This Court has personal jurisdiction over Defendants because Defendants are licensed to do business in California or otherwise conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiff occurred in the State of California and this District, Defendants have sufficient minimum contacts with and/or otherwise have purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

19.    Venue is proper in this District because Plaintiff is a resident of this District and a substantial part of the events, transactions, and/or omissions giving rise to the claims asserted herein occurred in this District; and, a substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this District.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.    OVERVIEW OF FORCE-PLACED INSURANCE

20.    When a home loan is approved, the mortgage servicer typically requires the borrower, under the terms of the mortgage, to carry the proper amount of hazard or flood insurance on the property. Should the borrower fail to maintain adequate insurance, the mortgage servicer may purchase insurance on the borrower's behalf. These servicer-purchased policies are referred to as "force-placed" insurance.

21.    Force-placed insurance has been a part of the mortgage industry for decades, and is not inherently objectionable. In theory, force-placed insurance merely ensures that the mortgagee's interest in the secured property is protected. Accordingly, mortgage loan contracts typically allow the lender or servicer to "force-place" insurance if the homeowner fails to maintain adequate coverage. Per the loan contract, the cost of the policy becomes additional debt secured by the mortgage.

## B.    FORCE-PLACED INSURANCE ABUSE THROUGH PAYMENT OF KICKBACKS

22.    Although force-placed insurance has been a well-known part of the mortgage process for decades, the discretion afforded to mortgage servicers to force-place insurance is limited by the bounds of reasonable conduct and by the express terms of the mortgage contract. In recent years, regulators have routinely punished lenders and insurance companies for misusing and abusing force-placed insurance to unfairly extract money from homeowners through the payment of kickbacks.

23.    Examples of such regulatory crackdowns can be found in New York:

A 2011 investigation by the New York Department of Financial Services revealed that the premiums charged to homeowners for force-placed insurance were two to ten times higher than premiums for voluntary insurance — despite the fact that force-placed insurance provides less protection for homeowners than voluntary insurance.

This same investigation gave the reason for these obscenely high rates as "reverse competition."

According to the report, force-placed insurers vied with each other to pay mortgage companies and banks holding a consumers' mortgage, commissions and reinsurance participations in the force-placed writings arising out of their loan portfolios.

Normal competition to provide the lowest price to the homeowners paying the force-placed insurance premiums disappeared as the insurers sought to buy the business through a share of the profits from force-placed insurance. These profit-sharing arrangements created incentives for banks and mortgage servicers to buy the highest-priced force-placed policies to get greater commissions at the expense of the unfortunate homeowners who had to pay up if they did not want the mortgage company or bank to foreclose.

<https://agencychecklists.com/2016/09/09/more-homeowners-to-get-refunds-for-improper-force-placed-insurance-policies-14928/>.

CLASS ACTION COMPLAINT                                                              6

24.    And Massachusetts:

HSBC will pay a fine of $4 million as part of a settlement with the state of Massachusetts over charges that the bank took commissions and kickbacks for force-placed insurance policies.

According to the office of Massachusetts Attorney General Maura Healey, HSBC received "compensation" in connection to the force-placed insurance premiums charged to HSBC's borrowers, which Healey's office alleges created an "improper conflict of interest" and violated state consumer protection laws.

Healey's office states that an affiliate of HSBC was allegedly paid commissions by Assurant for the sale of the force-placed insurance policies, despite the fact that HSBC's affiliate did not perform any of the "traditional functions" of an insurance agent.

Additionally, Healey's office alleged that HSBC also participated in Assurant's quota-share reinsurance program, which enabled its affiliate to share in the profits of Assurant's "highly lucrative" force-placed insurance business.

Under the terms of the settlement, HSBC agreed to not accept commissions, profit-sharing, or reinsurance proceeds or any "free or below market value services" from insurance carriers that it uses to write force-placed insurance policies on Massachusetts borrowers' properties.

As part of the settlement, HSBC will provide $2.675 million in restitution to affected Massachusetts homeowners, and pay an additional $1.4 million to Massachusetts.

<https://www.housingwire.com/articles/36355-hsbc-to-pay-4-million-to-settle-force-placed-insurance-kickback-charges>.

## C.    DEFENDANT OCWEN'S OWN HISTORY OF FORCE-PLACED INSURANCE ABUSE

25.    Ocwen as well has not been immune from the temptation to engage in misuse of the force-placed insurance system. Indeed on December 12, 2013, Ocwen entered into a consent decree with all fifty States and agreed to pay $2 billion based

on, in part, its misuse of the force-placed insurance system.

26.    Unfortunately, despite this settlement, the financial inducements to gaming the system proved too great for Ocwen to continue to ignore, and in 2015, Ocwen again agreed to pay approximately $140 million to settle a class action lawsuit challenging its receipt of improper kickbacks from a force-placed insurance policy vendor:

> Anyone who has taken out a home mortgage knows that one of the borrower's key responsibilities is to pay hazard insurance premiums on the property and not let the policy lapse.
>
> But are you aware that if you fail to keep the insurance current, or if the premiums aren't paid from your escrow account, the lender or its mortgage servicer can obtain its own coverage, which may cost you more than the policy you originally chose?
>
> How much more? Double the premium cost you had been paying? Triple? Even 10 times higher — sometimes for inferior coverage? Potentially any of the above.
>
> A $140 million national class-action settlement last week — one of a series of cases brought against major banks, mortgage servicers and insurers — shed fresh light on a controversial business practice in the mortgage industry: alleged kickbacks in connection with "force-placed insurance" policies.
>
> Force-placed insurance has been a feature of mortgage contracts for years. It has a legitimate purpose: protection of the house, which is the lender's collateral for the loan, says Florida attorney Dennis Wall, who has written a new book on the subject for the American Bar Association. But when kickbacks and affiliate side deals drive premiums to abusive levels, he told me in an interview, "it's a bad game."
>
> The latest settlement involves nearly 400,000 borrowers across the country whose mortgages were serviced by Ocwen Financial Corp. between January 2008 and January of this year. The plaintiffs, who filed suit in U.S. District Court in Miami, charged that Ocwen and Assurant, a large insurance company, and Assurant affiliates "entered into exclusive and collusive relationships" whereby the insurer or its affiliates allegedly

paid Ocwen kickbacks, commissions and other compensation in exchange for force-placed coverage for lapsed policies at inflated premium costs to the consumer.

Ocwen and Assurant both denied wrongdoing as part of the settlement. In a statement provided to me, Ocwen said it settled the case to "avoid prolonged and distracting litigation." Terms of the final settlement must be approved by a federal judge next month before the Ocwen clients can begin to file claims for recovery of overpayments.

According to the complaint, "the money paid [was] not given in exchange for any services" supplied by Ocwen. It was "simply grease paid to keep the force-placed machine moving." Borrowers frequently had no idea what was going on.

One plaintiff in the class action had been paying around $700 in premiums annually for his original hazard insurance policy, issued in 2006, but coverage lapsed in 2008 because of nonpayment. After his servicing was transferred to Ocwen in 2011, he received a note from the company saying that it had force-placed a new policy with an annual premium three time higher — $2,180. A year later, the premium was raised to $2,244.

<https://www.washingtonpost.com/realestate/allegedly-abusive-mortgage-

insurance-deals-lead-to-class-action-settlement/2015/05/05/8c0eb764-f284-

11e4-bcc4-e8141e5eb0c9_story.html?utm_term=.aca412f783b3>.

27.    Recent events demonstrate that Ocwen continues undeterred to systematically misuse force-placed insurance for its own improper gain:

Embattled mortgage servicer Ocwen Financial Corp. revealed in a regulatory filing on Monday that it is facing yet another probe into its business practices — this time with the U.S. Department of Housing and Urban Development's inspector general looking into its arrangements for so-called force-placed insurance policies.

HUD's Office of Inspector General subpoenaed Ocwen in April to turn over documents related to its lender-placed insurance arrangements with an undisclosed mortgage insurer, Ocwen said in a securities filing. The subpoena did not include any allegations against Ocwen, and other servicers in the industry received similar requests, according to the filing.

CLASS ACTION COMPLAINT                                                    9

But Ocwen has faced allegations over its lender-placed insurance policies before, with homeowners accusing it of artificially inflating the cost of premiums in exchange for kickbacks from insurer Assurant Inc. Ocwen and Assurant in 2015 agreed to pay $140 million to settle the allegations without admitting any wrongdoing.

Ocwen is also currently embroiled in a suit brought by the Consumer Financial Protection Bureau in April, which accused it of forcing homeowners into force-placed insurance policies by letting their original coverage lapse.

Lender-placed insurance, which some consumer advocates label as force-placed insurance, help protect a lender's interest in a property if homeowners allow their insurance to lapse. If the homeowner either lets an insurance policy lapse or decides against purchasing the insurance, the lender can choose an insurance policy for the owner, which can often be more expensive than traditional homeowners insurance.

<https://www.law360.com/articles/924499/ocwen-faces-hud-subpoena-over-force-placed-insurance>.

## D.    DEFENDANTS' ILLEGAL AND UNFAIR MISUSE OF FORCE-PLACE INSURANCE FOR PLAINTIFF'S AND CLASS MEMBERS' HOMES

28.    In the present matter, Ocwen and SWBC conspired to procure force-placed insurance policies that were unnecessary and in a manner that exceeded the bounds of reasonableness and the spirit, intent and letter of the mortgage contracts entered into by Plaintiff and all members of the Class.  As a result, Ocwen and SWBC reaped profits from the borrowers which were not required nor contemplated by the mortgage contracts.

29.    The mortgage contracts do not disclose that the lender or servicer, or their affiliates, will place additional and unnecessary hazard insurance policies on top of existing borrower placed individual policies, nor that the lender or servicer will receive a "commission" or other compensation from the force-placed insurance providers for purchasing the insurance.  Furthermore, the mortgage contract does not

CLASS ACTION COMPLAINT                                              10

disclose that the cost of the force-placed policy will incorporate certain costs not properly chargeable to the borrower.

30.    Each and every mortgage at issue in this litigation that is owned and/or serviced by Ocwen requires borrowers to purchase and agree to maintain hazard insurance coverage on their secured property as a condition to closing.

31.    Class members' mortgage contracts are standard-form contracts that contain the same or materially the same clauses addressing the lender's ability to force-place insurance, exercising its own discretion.

32.    Any commissions received by Ocwen are unearned and unreasonably charged to Class members as part of the force-placed insurance premiums. No services are performed by Ocwen for these commissions. Rather, any nominal services performed in relation to the placement of the force-placed policies are undertaken by SWBC, not Ocwen. SWBC is more than compensated for any services it performs through the portion of the force-placed insurance premiums it retains. The payments to Ocwen are undisclosed and unauthorized kickbacks that serve no purpose other than to encourage Ocwen to funnel business to SWBC at Plaintiff and the Class's expense. The commissions or kickbacks are paid by SWBC or its affiliated insurance companies to Ocwen in order to manipulate the force-placed insurance market and continue their pre-existing, uncompetitive, and exclusive relationship with Ocwen. Ocwen is using the force-placed insurance system as a profit center to boost its own bottom line

33.    Upon information and belief, the kickbacks paid by SWBC to Ocwen are directly tied to the cost of the force-placed insurance and are a significant percentage of the total cost of each premium.

34.    Additionally, once a lapse in hazard insurance occurs, Plaintiff and the Class have no way of refusing the charges for the force-placed insurance premiums. Likewise, once a lapse occurs, and the lender or third-party servicer decides to force place insurance, Plaintiff and the Class have no way of retroactively placing the policy

CLASS ACTION COMPLAINT                                                              11

with a low cost insurance provider. The decision is 100% that of the lender and Plaintiff and the Class are completely at the mercy of the lender to exercise its discretion in good faith when force placing the policy and selecting the insurance provider and applicable rate.

35. The force-placed insurance policies at issue are uniformly more expensive than standard insurance coverage, reflecting the inclusion of the illegal and unfair kickback. Such policies can cost as much as ten times that of comparable or better, more comprehensive insurance policies that are readily available in the marketplace. While the force-placed insurance policy is for the benefit of the lender, the cost is passed on to the borrower. Ocwen selects SWBC polices because of the financial incentives it negotiated to receive and in turn, self-deal, act in bad faith and breach the implied covenant of good faith and faith dealing.

36. Ocwen, in bad faith and motive, entered into exclusive arrangements with SWBC whereby Ocwen secures coverage on the consumer's property and then charges the consumer for the premiums it allegedly paid to the insurers' affiliates (in this case, SWBC). Ocwen did not negotiate or receive any sort of discount as part of the exclusive arrangement it made with SWBC and the premiums charged for force-placed insurance are not arrived at on a competitive basis, but instead are significantly higher than those available in the open market for comparable or more comprehensive policies.

37. Ocwen only purchased the policies at issue from SWBC because it was financially motivated to do so by the kickbacks that would flow into its coffers. Upon information and belief, SWBC paid Ocwen in cash and/or through the provision of other things of value as an incentive to enter into the exclusive contractual relationship. Likewise, despite there being no attempt to shop for a competitively priced policy, the commissions on force-placed polices are significantly higher than those available on lower-priced insurance policies of comparable or better coverage. Accordingly, no good faith, arms-length transactions are taking place. Simply put,

CLASS ACTION COMPLAINT                                                                    12

Ocwen, as servicer, exercises its unfettered discretion to intentionally secure the highest priced, lowest coverage policies that allow them to maximize their fees and revenue, while the Class members bear the entire financial burden. This is generally referred to as reverse competition.

38. As a result, the amounts charged by Ocwen for force-placed insurance policies are many times more than what borrowers paid for voluntary coverage and many times more than what Ocwen would pay if it had obtained insurance coverage on a competitive basis on the open market and free of the exclusive arrangements described above. Moreover, force-placed insurance policies provide less coverage than voluntary insurance policies, as they protect only the lender's interests in the property.

39. Defendants' force-placed insurance scheme operates in the same or materially the same manner for all Class members.

40. Ocwen never obtains an individual policy for any individual borrower. In fact, Plaintiff's and all Class members' mortgages are included in a portfolio covered by a pre-arranged master policy with SWBC. Ocwen, therefore, exercises no case-by-case discretion when purchasing force-placed insurance for an individual homeowner. Rather, Ocwen has done nothing but enter into an exclusive and all-inclusive agreement with SWBC which is not borne of bargaining, necessity or even convenience, but pure profit. The premiums represented and charged to Class members are deceptive, misleading, false, and inflated by the amount funneled to Ocwen, breaching the mortgage contract and the covenant of good faith and fair dealing.

41. Upon information and belief, SWBC's agreement with Ocwen provides that all properties within Ocwen's portfolio will be monitored and if a homeowner's policy lapses or is deemed insufficient, such property will be automatically force-placed with an insurance policy provided by SWBC. The insurance is automatically placed on the property and the premium is charged to the homeowner even if the lapse

is discovered many months or years later. Upon information and belief, when a lapse in a homeowner's insurance is discovered, an automated process is applied to all borrowers like Plaintiff and the Class members.

42.    Under this common course of conduct in force-placing insurance, the "premiums" for insurance that are charged to the Plaintiff and the Class are exorbitant and illegal because they include not only the high (and non-competitive) cost of the insurance, but also illegal kickbacks to Ocwen, which performs little to no functions or services related to the force-placement of the individual policies.

43.    Therefore, in addition to performing no work in the actual placement of the force-placed policy, Ocwen actions, in concert with SWBC, act to penalize borrowers, including Plaintiff and the Class, by sticking them with the highest priced force-placed insurance policy possible while at the same time generating substantial revenues and profits for Defendants. Ocwen abuses its discretion to force-place insurance arbitrarily, in bad faith and with bad motive and intent in order to secure a substantial kickback from SWBC and self-deal.

44.    Generally, the high-cost premiums are added to the principal balance of the borrower's mortgage loan or deducted from his or her tax and insurance escrow account.

45.    The actions and practices described herein are undertaken in bad faith and motive. Ocwen misrepresents to individual borrowers that they will procure a policy to cover the risk arising from their properties when, in fact, a "master" policy has already been put in place. Ocwen and SWBC then charge borrowers inflated premiums for the master policy, which are calculated to include kickbacks and costs not properly charged to the borrower without regard for competition on the open market. Ocwen and SWBC's only goal is to maximize their profits by charging high prices and collecting unjustified kickbacks.

46.    Plaintiff does not dispute that Ocwen is entitled under Plaintiff's and each Class member's mortgage to purchase force-placed insurance when a lapse in

coverage actually occurs; however, Plaintiff does maintain that said purchases must be made in good faith, without bad motive and in compliance with the mortgages' terms.

47.     Defendants' manipulation of the force-placed insurance process has worked to the great detriment of the Plaintiff and the Class and is prohibited by law.

**E.     PLAINTIFF IS A TYPICAL VICTIM OF DEFENDANTS' COMMON COURSE OF MISCONDUCT**

48.     In or around July 2006, Plaintiff purchased a single family home located at 25431 Prado De Las Fresas, Calabasas, California 91302 (the "Property"). The Property was purchased for Plaintiff's personal use and enjoyment.

49.     To finance the purchase of the Property, Plaintiff executed a written thirty year mortgage with American Home Mortgage in the amount of $2,206,000 (the "Mortgage").

50.     Typical of most mortgages, Plaintiff's Mortgage included a provision that required her to secure and pay for adequate property insurance that protected the Property against loss by fire and other hazards.  It also provides that the lender has the right to force-place insurance in the event Plaintiff fails to secure such a voluntary policy or if Plaintiff's voluntary policy lapses.

51.     During 2015 and 2016, Defendant Ocwen made repeated purchases of an overpriced and unnecessary force-placed insurance policy from SWBC on and for the Property, even though the Property was already adequately covered by a pre-existing hazard policy, a fact that Ocwen was aware of.  These purchases from SWBC were as follows:

- April 21, 2015, in the amount of $3,200.23;

- May 21, 2015, in the amount of $3,200.23;

- June 23, 2015, in the amount of $3,200.23;

- July 21, 2015, in the amount of $3,200.23;

- August 21, 2015, in the amount of $3,200.23;

- September 22, 2015, in the amount of $3,200.23;

- September 25, 2015, in the amount of $20,007.12;

- October 21, 2015, in the amount of $3,334.52;

- November 23, 2015, in the amount of $3,334.52;

- December 222, 2015, in the amount of $3,334.52;

- January 21, 2016, in the amount of $3,334.52;

- February 23, 2016, in the amount of $3,334.52;

- March 22, 2016, in the amount of $3,334.52;

- April 22, 2016, in the amount of $3,330.49;

- May 23, 2016, in the amount of $3,330.49.

52.     These amounts, which were many times in excess of the cost of the individual policy that the Property already had in place, were invoiced to Plaintiff and added to the total amount due under the Mortgage. On Plaintiff's information and belief the payments to SWBC were further inflated well above market prices by the addition of kickbacks Ocwen received from SWBC. Thus, the coverage provided by the force-placed policy Ocwen purchased was both duplicative of Plaintiff's existing insurance policy and unnecessary.

53.     Defendant Ocwen attempted to collect the full amount charged by SWBC, including the kickbacks paid to or retained by Ocwen, from Plaintiff. Ocwen's collection efforts included requiring Plaintiff to pay the full amount invoiced on the unnecessary and duplicative force-placed insurance (inflated premiums and kickbacks alike) as a precondition of receiving a loan modification – a modification that was never finalized because of this unreasonable and baseless demand by Ocwen. As a result, Plaintiff suffered actual and quantifiable harm.

54.     The charges for force-placed insurance imposed on Plaintiff included amounts that were not true costs of insurance as permitted by the contract, specifically the kickback that went into Ocwen's pockets.

55.     There was no valid basis or authorization for the force-placement of this policy.  The policy was not placed, charged or paid by Plaintiff in any voluntary

manner.  Plaintiff never voluntarily paid any premium for any force-placed policy.

56.    Upon information and belief, Defendant Ocwen received a substantial kickback or commission from SWBC as a percentage of the premium for the force-placed policy taken out on the Property.

57.    Based on the forgoing, Plaintiff was forced to retain counsel and file this class action lawsuit seeking monetary, declaratory and injunctive relief for the defined Class.    As Plaintiff still owns her home in California, she remains subject to Defendants' unlawful practices, described and challenged herein, in the future. Further Defendants' unlawful conduct is capable of repetition evading review if this matter does not go forward.

58.    As of this filing, Plaintiff has not received any "refund" or payment from any Defendants by check, electronic transfer, bank wire, or any other means.

## CLASS ACTION ALLEGATIONS

59.    This action is brought as a class action and may properly be so maintained pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure. This action seeks recovery of actual damages, restitution, injunctive and equitable relief arising from Defendants' unfair business practices.

60.    **Class Definitions:**  The Class sought to be represented in this action is defined as follows:

**The Class**

All borrowers subject to a mortgage serviced by Ocwen on property located in California who were charged or paid premiums for a force-placed insurance policy during the Class Period unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender (which provided for lender placed hazard insurance); (5) the borrower has filed a claim for damages which has been paid in full or part by the force-placed insurer; or, (6) the cost of the force-placed insurance was cancelled out in

full (the "California Class").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was originally filed. Excluded from the Class are: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to hear this case.

61.     Plaintiff reserves the right to modify or amend the above-referenced definitions before the Court determines whether certification is appropriate.

62.     Defendants subjected Plaintiff and Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendants' standard and undisputed business practice.

63.     **Numerosity of the Class.**  Members of the Class are so numerous that their individual joinder herein is impracticable. The Defendants sell and service thousands of mortgage loans and insurance policies in California. The individual Class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by Defendants. The precise number of members of the Class certainly numbers in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

64.     **Ascertainable Class.** The proposed Class is ascertainable.  The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and hence, will have binding effect on all class members. These Class members can be readily identified from business records, billing systems, and telephone records of the Defendants and other means readily available to the Defendants, and thus by the Plaintiff, through minimally intrusive discovery. The

Class is numerous. Joinder of all Class members is impracticable due to the relatively small monetary recovery for each Class member in comparison to the costs associated with separate litigation and likelihood that due to the nature of the lender-placed insurance that Class members faced they may have when initially contacted Defendants, Class members are likely in poor financial situations.

65. **Commonality.** There are questions of law and fact that are common to the Plaintiff and Class members' claims. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. Among such common questions of law and fact are the following:

a. Whether Ocwen breached its mortgage agreements with Plaintiff and the Class by charging them for unnecessary force-placed insurance and/or force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments);

b. Whether Defendants owe their customers a duty of good faith and fair dealing, and if so, whether Defendants breached this duty by adding a kickback to the cost of insurance;

c. Whether Ocwen owes its customers a duty of good faith and fair dealing, and if so, whether it breached this duty by arranging for kickbacks or commissions for itself and/or its affiliates in connection with lender-placed insurance and failing to disclose the same to its customers;

d. Whether the Defendants manipulated the forced-placed mortgage purchases in order to maximize the profits to themselves to the detriment to Plaintiff and the Class;

e. Whether other Ocwen affiliates provide any work or services in order to receive a "commission or other compensation";

f. Whether Defendants were unjustly enriched by their conduct;

g. The appropriateness and proper form of any declaratory or injunctive

relief; and

h.    The appropriateness and proper measure of monetary and other damages sustained by the Class.

66.    **Typicality.** Plaintiff is a typical member of the Class and her claims are typical of the claims of members of the Class.    Typical of other Class members, Plaintiff was charged and paid an inflated non-competitive premium for a force-placed insurance policy during the Class Period. Plaintiff and the Class members each sustained, and will continue to sustain, damages arising from Defendants' common and uniform course of wrongful conduct, as alleged more fully herein.    Plaintiff's claims are founded on the same legal theories as those of the Class.

67.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interest of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in the prosecution of complex class actions involving consumer fraud, including mortgage fraud. Plaintiff has no interests contrary to the class members, and will fairly and adequately protect the interests of the Class.

68.    To prosecute this case, Plaintiff has retained the law firms of Zimmerman Reed, PLLP, and the Law Offices of David N. Lake, APC. These firms have extensive experience in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

69.    The questions of law or fact common to Plaintiff and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.    All claims by Plaintiff and the unnamed Class members are based on the force-placed insurance policies that Defendants unlawfully secured through a common and uniform course of misconduct.

70.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

71.  **Superiority of Class Adjudication.** The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are Class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relation to the benefits received. The damages, restitution and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, Class members could afford to seek legal redress individually for the wrongs complained of herein. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

72.  In the alternative, the above-referenced class may be certified because:

a.  The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

b.  The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

CLASS ACTION COMPLAINT                                                    21

c.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the Class.

### FIRST CAUSE OF ACTION

**Breach of Contract**

**(Against Ocwen On Behalf of the Class)**

73.    Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

74.    Plaintiff and the Class members have standard form mortgage contracts with Ocwen that are similar in all material respects with respect to force-placed insurance. At all times, Ocwen was contractually obligated to service the loans of Plaintiff and the Class pursuant to the terms of the mortgage contracts.

75.    To the extent the mortgage contracts of Plaintiff and Class members permitted Ocwen to unilaterally force-place insurance, Ocwen was contractually permitted to do so only to the extent necessary to protect the mortgagee's interest in the secured property.

76.    Under these mortgage contracts, Ocwen was permitted to obtain lender-placed insurance in the event of an actual lapse in coverage. However, Ocwen was only permitted to do so in a manner and amount that is reasonable and appropriate to protect an insurable interest in the property.  Although these mortgage contracts allow Ocwen to charge the homeowners for true "costs of the insurance coverage so obtained" and "amounts disbursed," nothing in the contract authorizes Ocwen to charge Plaintiff for amounts retained, rebated or kicked-back to Ocwen or for illusory placement services.  Amounts rebated or retained by Ocwen, in transactions such as Plaintiff's, are not a "cost of the insurance coverage" and not a true "disbursement" authorized under the form mortgage contract.

77.    Ocwen breached its mortgage contracts with Plaintiff and the Class members in at least the following respects:

a.    Charging Plaintiff and the Class members for "costs of insurance" that was unnecessary or exceeded the true costs of insurance and amounts truly "disbursed" to the insurers;

b.    Exceeding its contractual authority to require borrowers to pay for the cost or expenses the lender incurred for force-placed insurance by requiring borrowers, such as Plaintiff and the Class members to pay the full gross amount of the premium for force-placed insurance, irrespective of the fact that the full gross premium amount was not actually an expense or cost to Ocwen because a portion of it was paid back to Ocwen and/or its affiliates in the form of a pre-negotiated commission.

c.    Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class members and not passing that percentage on to the borrower, thereby creating the incentive to seek and force-place upon the borrower (i.e., Plaintiff and the Class members) the highest-priced premiums possible;

d.    Charging Plaintiff and the Class members for undisclosed kickbacks and commissions in the manner described; and

e.    Charging Plaintiff and the Class members for compensation placing the insurance when such compensation was not authorized by the contract and no actual services were performed by Ocwen to earn such compensation.

78.    As a direct, proximate, and legal result of the aforementioned breaches of contract, Plaintiff and the members of the Class have suffered damage, financial loss and injury.

79.    The conduct complained of is ongoing and unless enjoined will continue and continue to put Class members, including Plaintiff, at risk of further damage.

80.    The conduct set forth above has and continues to harm Plaintiff and the Class.  Unless enjoined, these practices will continue to put Class members at risk of further damage and loss. A declaration of the parties' rights under the contracts is

1  appropriate and sought.

2      81.    By reason of the foregoing, Plaintiff and each member of the Class are

3  entitled to recover from Defendant damages, restitution, injunctive relief, declaratory

4  relief, the cost of bringing this action (including reasonable attorneys' fees and costs),

5  and any other relief deemed just and equitable in the circumstances.

6  **SECOND CAUSE OF ACTION**

7  **Breach of the Implied Covenant of Good Faith and Fair Dealing**

8  **(Against Ocwen On Behalf of the Class)**

9      82.    Plaintiff alleges and incorporates by reference all the preceding

10  paragraphs above as if fully set forth herein.

11      83.    The implied covenant of good faith and fair dealing is implied in all

12  contracts, including any contracts between Plaintiff and Ocwen. Good faith and fair

13  dealing is an element of every contract and imposes upon each party a duty of good

14  faith and fair dealing in its performance.

15      84.    The implied covenant of good faith and fair dealing requires a party

16  vested with discretion under a contract to exercise that discretion reasonably and with

17  proper motive, not arbitrarily, capriciously or in a manner inconsistent with the

18  reasonable expectations of the parties.

19      85.    Where an agreement permits one party to unilaterally determine the

20  extent of the other's required performance, an obligation of good faith in making such

21  determination is implied.

22      86.    Where a party to a contract makes the manner of its performance a matter

23  of its own discretion, the law does not hesitate to imply the proviso that such

24  discretion be exercised honestly and in good faith.

25      87.    In general, the implied covenant of good faith and fair dealing seeks to

26  protect the contracting parties' reasonable expectations and serves to supply limits on

27  the parties' conduct when their contract defers decision on a particular term, omits

28  terms or provides ambiguous terms.

CLASS ACTION COMPLAINT    24

88.    Plaintiff and the Class members' mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower's property if their homeowner's insurance lapsed.  Ocwen was party to a contract with Plaintiff and each Class member that made the manner of its performance a matter of its own discretion.   Plaintiff and other members of the Class, in turn, were dependent on Ocwen and relied on Ocwen as the party in control to act reasonably, in good faith and with proper motive.

89.    Mortgage servicers or lenders, like Ocwen, are permitted to unilaterally choose the company to purchase force-placed insurance from but have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for their or their affiliates own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

90.    In exercising its discretion, Ocwen acted with bad motive and intention in order to self-deal and penalize Plaintiff and other Class members by in some instances purchasing unnecessary and redundant coverage, and in all instances purchasing insurance with less coverage and with considerably higher premiums than alternative policies available in the marketplace and able to be purchased with no additional burden. Rather than acting out of concern for the mortgage owners security, Ocwen took advantage of the fact that many borrowers would not notice that redundant insurance had been placed on their properties to achieve improper profits at the borrowers' expense. Ocwen also seized upon the perceived lapse in coverage as a money-making opportunity for it and entities it had private kickback deals with (SWBC) and as an opportunity to penalize Plaintiff and the Class members financially.  Ocwen acted not to protect its security in good faith, but rather to increase its profits at the expense of Plaintiff and the Class members by funneling business to entities (SWBC) that it had conspired with and agreed to pay it the largest kickbacks even though Ocwen conducted no work and performed no services to earn any such

1    "commissions" or kickbacks received.

2        91.    Further, the premiums on force-placed policies charged Plaintiff and the

3    Class members did not reflect the true costs of insurance to Ocwen because in some

4    instances the new policy was redundant and unnecessary and in all instances a

5    sizeable portion of the premiums charged was secretly retained by and/or refunded to

6    Ocwen as a "commission" or kickback.  Those amounts in no manner reflected the

7    fair value of any services provided.  In fact, Ocwen performed no services for the

8    commissions and kickbacks received.  These were not costs properly charged to

9    Plaintiff and the Class members.

10        92.    But for the desire to maximize their commission/kickback revenue and

11    the desire to penalize Plaintiff and the Class members, no rational person would have

12    chosen to purchase the type of insurance policies Ocwen did for Plaintiff and the Class

13    members.

14        93.    In all of its actions described herein, Ocwen acted on its own behalf and

15    as the duly authorized agent of the owner or assignee of the mortgage agreement of

16    Plaintiff and the members of the Class. Ocwen was contractually obligated to service

17    the loans of Plaintiff and the members of the Class pursuant to the terms of the

18    mortgage agreements.

19        94.    The mortgage contracts and insurance policies of Plaintiff and the Class

20    contained an implied covenant of good faith and fair dealing whereby Ocwen agreed

21    to perform the obligations under the policies in good faith, to deal fairly with Plaintiff

22    and the Class, and not to charge unnecessarily inflated fees for the lender-placed

23    insurance for the purposes of maximizing its own profits at the Class's expense. Any

24    discretionary authority granted to Ocwen under the terms of Plaintiff and members of

25    the Classes' mortgage contracts was subject to Ocwen's implied duty of good faith

26    and fair dealing.   Accordingly, to the extent that the mortgage contracts of Plaintiff

27    and the members of the Class permitted Ocwen to unilaterally "force-place"

28    insurance, Ocwen was obligated not to exercise their discretion in bad faith for their

own financial gain for the purposes of maximizing profits at borrowers' expense.

95.    Ocwen breached its duty of good faith and fair dealing in at least the following respects:

a.    Placing redundant and unnecessary hazard insurance policies on borrowers properties and charging borrowers the fees and costs of that additional insurance when the property was already insured by a borrower placed individual policy;

b.    Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead – for the sole purpose of maximizing their own profits – forcing borrowers to pay for insurance policies from providers of Ocwen's choice, such as SWBC.  Its policies needlessly came with substantially greater premiums and less coverage than borrowers' existing policies which provided an improper financial benefit to Ocwen and/or its affiliates;

c.    Using its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize its own profits;

d.    Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

e.    Assessing excessive, inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

f.    Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest priced premiums possible; and

g.    Charging Plaintiff and the Class for commissions and claiming it to be a "cost" when the insurance is prearranged and no commission is due.

CLASS ACTION COMPLAINT                                                                27

96.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages, financial loss and injury.

97.    The unlawful and unfair business practices set forth above have and continue to harm Plaintiff and the Class. Unless enjoined these practices will continue and continue to put Class members at risk of further damage and loss.  As a result, Plaintiff and the Class are entitled to injunctive, declaratory and other equitable relief.

98.    By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## THIRD CAUSE OF ACTION

### Violation Of The Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On Behalf of the Class Against All Defendants)

99.    Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

100.    Plaintiff brings this claim on her own behalf and on behalf of the Class members.

101.    California's Unfair Competition Law (the "UCL") defines unfair competition to include and "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200, *et seq.*

102.    Defendants engaged in unfair business practices under the UCL because their actions, as described herein, are immoral, unethical, oppressive and substantially harmful to Plaintiff and the Class members; and the justification for Ocwen and SWBC's practices and conduct is outweighed by the gravity of the injury to Plaintiff and the Class members.

103.    Plaintiff and the Class members were injured in fact and lost money or

property as a result of these unfair business practices. In particular and without limitation, Plaintiff and the Class members paid and incurred unreasonable and unnecessarily insurance premiums and paid and incurred excessive commissions and/or kickbacks in connection with Defendants' force-placed insurance policies.

104. By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendants restitution, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## FOURTH CAUSE OF ACTION

### Money Had and Received (Restitution)

### (Against All Defendants On Behalf of the Class)

105. Plaintiff alleges and incorporates by reference the preceding paragraphs above as if fully set forth herein, except those inconsistent with this count.

106. Ocwen received from Plaintiff and Class members a benefit in the form of overcharges related to lender-placed insurance policies – specifically in the form of undisclosed and unwarranted kickbacks and commissions.

107. Defendants entered into an agreement whereby the vendors – SWBC – would provide lender-placed insurance policies to Ocwen through its preferred insurance carriers for the portfolio of loans it monitored which were paid for by Plaintiff and the Class members at prices that were far higher than the market rates for policies that provide even more coverage.

108. SWBC paid and collected significant monies in kickbacks, commissions, and reinsurance tied directly to the cost of the lender-placed insurance premium (as a percentage). These commissions or kickbacks were paid to the Ocwen and/or their affiliates in order to be able to exclusively provide lender-placed insurance policies.

109. The kickbacks and commissions were subsumed into the price of the insurance premium and ultimately paid by the borrower. Therefore, all Defendants had the incentive to charge and collect inflated prices for the force-placed policies.

CLASS ACTION COMPLAINT                                                    29

110.   As a result, Plaintiff and the Class members have conferred a benefit on Defendants and Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them – kickbacks and commissions.

111.   Defendants will be unjustly enriched if they are allowed to retain the benefit, and each Class member is entitled to an amount equal to the amount each class member enriched Defendants and for which Defendants have been unjustly enriched.

112.   Nothing herein seeks to stop SWBC or other insurers from selling lender-placed insurance policies, or end the Defendants' practice of placing lender-placed insurance on properties. Plaintiff only seeks that the Defendants provide the same in good faith and not at inflated and noncompetitive prices.

113.   The unlawful and unfair business practices set forth above have and continue to harm Plaintiff and the Class members.  Unless enjoined these practices will continue and continue to put Class members at risk of further damage and loss. Plaintiff and the Class are entitled to equitable relief.

114.   By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendants restitution, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all those similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

A.     For an order certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.     For preliminary and permanent injunctive relief prohibiting Defendants from engaging in the wrongful practices alleged in this Complaint;

CLASS ACTION COMPLAINT                                                          30

1      C.     For damages sustained by Plaintiff and the Class;

2      D.     For restitution;

3      E.     For disgorgements of profits;

4      F.     For payment of reasonable attorneys' fees and costs pursuant to the
5  "common fund" doctrine, statutory fee-shifting provisions, equitable principles of
6  contribution, and/or any other applicable method of awarding attorneys' fees and costs
7  in class actions;

8      G.    For payment of costs of suit incurred herein;

9      H.    For payment of prejudgment interest as provided by law; and,

10     I.     For any such further relief as this Court deems equitable, just and proper.

11 ### JURY TRIAL DEMANDED

12 Plaintiff seeks a trial by jury for all appropriate issues on each and every cause
13 of action in this Complaint.

14

15                  Respectfully submitted,

16                  **ZIMMERMAN REED LLP**

17 Date: May 17, 2018     By:    /s/ Christopher P. Ridout
18                  Christopher P. Ridout
                   *christopher.ridout@zimmreed.com*
19                  2381 Rosecrans Ave., Suite 328
                 Manhattan Beach, CA 90245
20                  Tel: (877) 500-8780
                 Fax: (877) 500-8781

21                  **LAW OFFICES OF DAVID N. LAKE, APC**

22                  David N. Lake (SBN 180775)
23                   *david@lakelawpc.com*
                 16130 Ventura Boulevard, Suite 650
24                  Encino, CA 91436
                 Tel: (818) 788-5100
25                  Fax: (818) 479-9990

26                  ***Attorneys for Plaintiff***

27

28

---

CLASS ACTION COMPLAINT                             31